UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MELISSA SMITH, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 23-cv-00018 (APM) |
| DISTRICT OF COLUMBIA | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.**

Plaintiff Melissa Smith is a former employee of the Superior Court of the District of Columbia. Smith was previously diagnosed with breast cancer and underwent extensive treatment. By April 2020, her treatment had concluded, and she was in remission. Still, Plaintiff remained medically vulnerable, and with the onset of the global coronavirus pandemic, she was permitted to work remotely full time. As the pandemic neared its end, Plaintiff asked to continue her full-time remote status as an accommodation under the Americans with Disabilities Act (ADA). Her employer refused. Plaintiff then asked to limit the required number of in-person days, but that request was rejected, too. Her employer explained that the requested accommodations would pose an undue hardship. Plaintiff eventually resigned from her position.

On January 4, 2023, Plaintiff filed suit asserting two claims against Defendant District of Columbia for failure to accommodate and retaliation in violation of the ADA. Before the court is Defendant's Motion for Summary Judgment as to both counts. Plaintiff does not contest entry of judgment as to her retaliation claim. The court therefore will enter judgment in favor of Defendant

as to that claim.[1]   However, as to Plaintiff's failure-to-accommodate claim, for the reasons explained below, the court denies Defendant's motion.

## II.

### A.

Plaintiff is a former employee of the Civil Division of the Superior Court for the District of Columbia. Def.'s Mot. for Summ. J. [hereinafter Def.'s Mot.], ECF No. 27, Def.'s Stmt. of Undisputed Material Facts in Supp. of Def.'s Mot. [hereinafter DSOF], ECF No. 27-2, ¶ 9. The Civil Division includes four branches: Civil Actions, Courtroom Support, Landlord and Tenant, and Small Claims and Conciliation. *Id*. ¶ 8. Plaintiff worked in the Small Claims Branch starting in 2016 and became a Deputy Clerk III in 2018. *Id*. ¶ 9.

Plaintiff was diagnosed with breast cancer in 2019, and she has been in remission since April 2020. *Id*. ¶ 10. The COVID-19 virus posed heightened health risks to Plaintiff, so her employer permitted her to work remotely full time from March 2020 through April 4, 2022. *Id*. ¶ 12. During that period, Plaintiff did not perform the aspects of her job that required her to be on-site. *Id*. ¶ 13. Defendant characterizes these in-person functions as essential, which Plaintiff disputes. *Id*. ¶ 14; Pl.'s Mem. in Opp'n to Def.'s Mot. [hereinafter Pl.'s Opp'n], ECF No. 28, Pl.'s Resp. to DSOF [hereinafter PSOF], ECF No. 28-1, ¶ 14 (Response).

In early January 2022, Plaintiff sought to extend her accommodation for full-time telework. DSOF ¶ 30. The Court's ADA Coordinator, Clifton Grandy, solicited feedback from Plaintiff's

---

[1] In responding to Defendant's motion, Plaintiff has withdrawn her claim of retaliation (Count II). Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 28, at 2 n.1. Defendant argues that this withdrawal is ineffective because it was not done via a stipulation of dismissal. Def.'s Reply in Further Supp. of Def.'s Mot. [hereinafter Def.'s Reply], ECF No. 29, at 8. No such stipulation is required. Because Plaintiff does not respond to Defendant's arguments relating to Count II, the court treats those arguments as conceded and enters judgment in favor of Defendant. *See Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It is well established that if a plaintiff fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded." (collecting cases)).

superiors about the request. *Id.* ¶ 31. In early February, Plaintiff's second-line supervisor, Small Claims Branch Chief, Jeremie Johnson, answered that the "Small Claims Leadership team" did not feel that Plaintiff's teleworking "present[ed] a hardship to the operations of the Small Claims Branch" and, in fact, that Plaintiff's teleworking had "enhanced" the Branch's operations. *Id.* But the following month, the Director of the Civil Division, Lynn Magee, responded that the "division needs all deputy clerks available to staff on-site operation[s]" due to growing backlogs and the expectation that, now post-pandemic, foot traffic would pick up. *Id.* ¶ 32. On March 25, 2022, Grandy informed Plaintiff that her accommodation request was denied. *Id.* ¶ 33.

The next day, Grandy offered Plaintiff several suggestions, including requesting reassignment to a fully remote position, requesting ADA parking, and working out a "Flexspace" arrangement. PSOF ¶ 33 (Response). Plaintiff both submitted a "Flexplace" application for 100% telework and proposed a modification to the Rotational Schedule applicable to all Deputy Clerks. DSOF ¶¶ 34–35. Under the Rotational Schedule then in place, Deputy Clerks worked remotely for one week and on-site the next, thus teleworking two weeks every month. *Id.* ¶ 18. Plaintiff proposed working on-site two days a week during her in-person rotations, rather than all five. *Id.* ¶ 35. Her employer denied both her Flexspace application and her alternative limited in-person schedule. *Id.* ¶¶ 37, 39. Beginning April 4, 2022, Plaintiff began working on the Rotational Schedule. *Id.* ¶¶ 38, 40.

On August 5, 2022, Plaintiff asked to work remotely full time through the end of April 2025. DSOF ¶ 54. A few days later, she requested reassignment to a different position. *Id.* ¶ 55. In October 2022, Grandy informed her that there were no positions at or below her current grade level for which she was qualified. *Id.* ¶ 56. Then, on March 16, 2023, Plaintiff resigned, citing "the failure of Courts to accommodate" her. PSOF ¶ 59 (Response); DSOF ¶ 59.

3

**B.**

Plaintiff filed this lawsuit on January 4, 2023. Compl., ECF No. 1. On July 1, 2024, Defendant moved for summary judgment on all counts, Def.'s Mot., which Plaintiff opposed only as to her failure-to-accommodate claim, Pl.'s Opp'n.

**III.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable factfinder could find for the nonmoving party; a fact is "material" only if it can affect the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

In assessing a motion for summary judgment, the court looks at the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *Id.* at 255. To defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial" and that a reasonable jury could find in its favor. *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015) (first citing Fed. R. Civ. P. 56(e); and then citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

**IV.**

**A.**

The ADA prohibits discrimination based on disability, which includes the failure to make "reasonable accommodation[s] to the known . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the

4

accommodation would impose an undue hardship on the operation of the business of such covered entity." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1300 (D.C. Cir. 1998) (quoting 42 U.S.C. § 12112(b)(5)(A)). The term "qualified individual with a disability" is defined as someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. (quoting 42 U.S.C. § 12111(8)).

"To withstand summary judgment" on a failure-to-accommodate claim, a plaintiff must adduce "sufficient evidence to allow a reasonable jury to conclude that (i) she was disabled within the meaning of the [ADA]; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Doak v. Johnson*, 798 F.3d 1096, 1105 (D.C. Cir. 2015). Defendant does not contest that Plaintiff was disabled within the meaning of the ADA, that it had notice of her disability, or that it denied her request for reasonable accommodation. Def.'s Mot., Mem. of P&A in Supp. of Def.'s Mot. [hereinafter Def.'s Mem.], ECF No. 27-1, at 8; Pl.'s Opp'n at 11, 14. The court's inquiry thus focuses only on the third element—whether she was able to perform the essential functions of her job with or without reasonable accommodation.

The plaintiff bears the burden of showing by a preponderance of the evidence that she has a disability but can perform the essential functions of the job with a reasonable accommodation. *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). "Essential functions are 'the fundamental job duties of the employment position.'" *Taylor v. Rice*, 451 F.3d 898, 906 (D.C. Cir. 2006) (quoting 29 C.F.R. § 1630.2(n)(1)). In determining what duties are "fundamental," the ADA expressly provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). And "if an employer has prepared a

5

written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.*  Also relevant are the "work experience of past incumbents in the job," *Taylor*, 451 F.3d at 906 (quoting 29 C.F.R. § 1630.2(n)(3)(vi)), and "[t]he current work experience of incumbents in similar jobs," *id.* (quoting 29 C.F.R. § 1630.2(n)(3)(vii)).

The D.C. Circuit also has looked to the Equal Employment Opportunity Commission's interpretive guidance in deciding what job functions are essential.  That guidance focuses first "on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential."  *Doak*, 798 F.3d at 378 (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(n)).  "If so, then the question of essentiality comes down to 'whether removing the function would fundamentally alter that position.'"  *Id.* (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(n)); *see also Taylor*, 451 F.3d at 908 ("An accommodation may be unreasonable if it . . . requires a fundamental alteration in the nature of the employer's program." (citation omitted) (cleaned up)).

If an accommodation is deemed reasonable, the employer can invoke the affirmative defense of "undue hardship." 42 U.S.C. § 12112(b)(5)(A); *see also Flemmings*, 198 F.3d at 861.  This requires the employer to show "special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."  *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002); *see also Flemmings*, 198 F.3d at 861.  Although reasonableness and undue hardship are "separate inquiries," they "often overlap."  *Taylor*, 451 F.3d at 908.

Defendant asserts that that Plaintiff's request for full-time remote work—even if reduced to only three days during her in-person rotation week—was not reasonable because, if granted, Plaintiff would not be able to perform essential job functions that necessarily occur on-site.  Def.'s

6

Mem., at 9–12. It also maintains that the accommodation request presented an undue hardship to the Civil Division, which had a critical need for Deputy Clerks to work at the courthouse. *Id.* at 12–16. Because there is substantial overlap between the two inquiries in this case, the court addresses them together.

**B.**

Defendant offered evidence that some duties of the Deputy Clerk III position could be performed only in person. In discovery, Defendant identified a list of no less than 18 public-facing job functions, such as "administer oaths and affirmations," "[a]pply appropriate stamps to documents when received for mail, drop box and customer service window filings," "[p]rovide procedural and case information to customers as appropriate at customer service window," and "[a]ssist customers in accessing cases in public file review area and provide copies when requested." DSOF ¶¶ 13, 14. The written job description for the Deputy Clerk III position and a USA Jobs posting are to the same effect. *See* Def.'s Mot., Ex. 7, Deputy Clerk III Job Description, ECF No. 27-3, at 181–82 (CM/ECF pagination). Plaintiff admits that she could not perform some of listed functions while working remotely. PSOF ¶¶ 13–14 (Response). And she largely concedes that these functions were part of her job description and that Deputy Clerks in fact performed them. PSOF ¶ 14 (Response). Plaintiff also failed to identify any comparable Deputy Clerk who worked only from home.[2]

Defendant also offers unchallenged evidence that supports its undue hardship defense. At the time Plaintiff made her request, there were "10 deputy clerk vacancies division wide,"

---

[2] Plaintiff cites to a former colleague named Sequoria Brown who was permitted to work remotely full time. Pl.'s Opp'n at 15. Brown, however, is not similarly situated. Brown was designated as a subject-matter expert to work full-time on configuring a new case management software program. DSOF ¶ 43. Her role therefore did not have the same public-facing duties as Plaintiff's.

leaving a "quarter of those positions vacant." DSOF ¶ 43. The need for clerks was "critical particularly in civil actions" where there was a 38% position vacancy rate. *Id.* Additionally, parts of the Civil Division were "drowning in onsite customers" and all deputy clerk staff was needed to "properly allocate resources across the division." *Id.* ¶ 32. Plaintiff herself admits that, starting in April 2022, she "assisted other branches of the Civil Division." PSOF ¶ 40.

Notwithstanding the foregoing, the record contains other evidence that creates a genuine dispute of material fact as to both the reasonableness of Plaintiff's accommodation request and Defendant's undue hardship defense.

At the time of Plaintiff's request for full-time remote work in March 2022, clerks within the Civil Division were operating on a Rotational Schedule, alternating weeks of on-site and remote work. DSOF ¶¶ 17, 20, 37. This schedule began at the start of the COVID-19 pandemic in March 2020. *Id.* ¶ 17. Plaintiff did not, however, work on the Rotational Schedule. Unlike her peers, Plaintiff was permitted to telework full time for two years as an accommodation due to the heightened risk she faced from COVID-19. *Id.* ¶¶ 22, 24, 26–27, 29. Despite her physical absence from the courthouse, Plaintiff still received the highest overall performance ratings during this time. *Id.* ¶¶ 46–47. Her supervisor, the Chief of the Small Claims Branch, Jeremie Johnson, described her work as "exemplary" and said that "she was always in the top tier of deputy clerks." PSOF ¶ 62.

Notably, Johnson did not believe full-time remote work by Plaintiff would harm operations of the Small Claims Branch. When Plaintiff sought to extend her accommodation in January 2022, Johnson expressed the unqualified view that "the consensus among the Small Claims Leadership team remains consistent with what's been previously submitted. Mrs. Smith's teleworking does not present a hardship to the operations of the Small Claims Branch." *Id.* ¶ 31 (Response). In fact,

8

Johnson continued, "at present, her teleworking has enhanced our operations." *Id.* (Response). He explained, "We utilize her Small Claims acumen to lead our training agenda for new employees and to refresh our more tenured staff. As a result, our errors are at an all-time low and our efficiency has increased. This occurs in large part because Ms. Smith can dedicate more time to the tasks she's assigned." *Id.* (Response). To top it all off, Johnson wrote that "Ms. Smith's work continues to exceed much [of] the work completed by on-site staff." *Id.* (Response).

Johnson was not the only supervisor who supported Plaintiff teleworking full time. After her initial request was denied, Plaintiff put in a "Flexplace" application seeking full-time telework, as Grandy had suggested. *Id.* ¶¶ 33–34. Plaintiff's direct supervisor, Monica Laurent, supported her application, stating that the request did "not present a hardship for the Small Claims Branch operations." *Id.* ¶ 39 (Response). Plaintiff's Flexplace application was nevertheless denied. *Id.* (Response).

Plaintiff's evidence allows her to survive summary judgment. Plaintiff does not contest that some of the job's functions could be performed only in person. Her evidence shows, however, that she was able to perform the job at the highest levels while working remotely for two years. A reasonable juror may conclude from that fact that the on-site elements of the job were marginal, rather than essential. *See Solomon v. Vilsack*, 763 F.3d 1, 137–38 (D.C. Cir. 2014) (holding that the plaintiff survived summary judgment because evidence demonstrating that she had met every deadline working a flexible schedule created a genuine issue as to whether strict work hours were an essential function of her job). That conclusion is reinforced by the Rotational Schedule. Although it required Deputy Clerks to be on-site every other week, the fact that they could perform some of their duties remotely half the time arguably diminishes the essential nature of the in-person job elements. Plaintiff's testimony that, in her experience, "clerks working on-site found there

was little work to be completed on-site" is consistent with that inference. PSOF ¶ 14 (Response). So, too, is Johnson's testimony that clerks working in person often sat "idle," even when fully staffed. *Id.*

Defendant appears to suggest that the remote work allowed under the Rotational Schedule was a vestige of the COVID-19 pandemic and therefore cannot be viewed as evidence that undermines the essential nature of the job's on-site duties. Def.'s Reply at 4. But that contention is weakened by the fact that the Rotational Schedule remained in place until at least March 2024, long after the pandemic had subsided. PSOF ¶ 70; *see also* DSOF ¶ 32 (suggesting that statutory stays were in the process of being lifted as early as March 2022). A jury will have to decide whether the in-person duties of a Deputy Clerk were essential or merely marginal functions of the job.

Johnson's and Laurent's unflagging support for Plaintiff's continued telework creates a dispute of fact as to Defendant's claim of undue hardship. Defendant dismisses these views as irrelevant because Plaintiff was a clerk of the Civil Division, not the Small Claims Branch specifically. Plaintiff was required to assist other Division components, Defendant argues, and Plaintiff having done so demonstrates that her full-time remote work was an undue hardship. Def.'s Reply at 5–6. But that argument falls short. Defendant never explains how often Plaintiff was required to assist other Division components or whether the tasks she performed for those components were public-facing. Without such facts, the court cannot say, as a matter of law, that Plaintiff's full-time accommodation request posed an undue hardship.

Finally, the record does not contain an explanation as to why Defendant rejected Plaintiff's narrowed accommodation request. On March 30, 2022, Plaintiff asked to telework three of the five days during the on-site portion of her Rotational Schedule. PSOF ¶ 35. Grandy rejected that

10

request the next day in a tersely worded email, writing that Plaintiff's "request is not an ADA matter. In addition, if it were, it would impose an undue hardship on [the] Civil Division and Superior Court operations." Def.'s Mot., Ex. 22, ECF No. 27-6, at 23 (CM/ECF pagination). No portion of the record cited by Defendant explains why Grandy thought Plaintiff's narrowed request was "not an ADA matter"—it plainly was. *Id.* Nor is there an explanation for why Grandy deemed Plaintiff's absence from on-site work three days every other week to be an "undue hardship." PSOF ¶ 37 (Response). Therefore, there remains a genuine dispute as to whether Plaintiff's narrowed accommodation was properly denied as posing an undue hardship.

## V.

For the reasons stated above, Defendant District of Columbia's Motion for Summary Judgment, ECF No. 27, is denied. The parties shall appear for a remote status conference on September 4, 2025, at 10:45 AM to discuss a schedule for further proceedings.

Dated: August 13, 2025

Amit P. Mehta
United States District Judge